# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5239-16T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
W.W., SVP-667-13.

_____

Submitted February 6, 2019 – Decided September 3, 2019

Before Judges Nugent and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-667-13.

Joseph E. Krakora, Public Defender, attorney for appellant W.W. (Alison Stanton Perrone, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Caroline Gargione, Deputy Attorney General, on the brief).

PER CURIAM

Appellant W.W., a sexually violent predator, appeals from a June 27, 2017 order that continued his commitment to the Department of Correction's Special

Treatment Unit (STU) following his first review hearing. On appeal, W.W. argues a single point:

> POINT ONE
>
> THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT W.W. CONTINUED TO MEET THE CRITERIA FOR SVP COMMITMENT.

For the reasons that follow, we affirm.

A judge committed W.W. to the STU in February 2013, pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4–27.24 to–27.38. The events that culminated in his commitment are recounted in our decision that affirmed the judgment that committed him to the STU and need not be repeated here. In the Matter of the Civil Commitment of W.W., No. A-3281-12 (April 18, 2016), certif. denied, 327 N.J. 353 (2016). The judgment mandated a review hearing within one year.

The review hearing took place on June 27, 2017. The State presented the testimony of a psychiatrist and a psychologist. Defendant did not testify, and he presented no witnesses. Following the hearing, the judge found the State had clearly and convincingly proven W.W. continued to be a sexually violent predator in need of civil commitment in a secure facility for control, care and treatment.

A-5239-16T5

The psychiatrist recounted W.W.'s history of sexual offenses and noted incarceration had not deterred him, as W.W. twice committed sexual offenses within two months of his release from prison. The doctor diagnosed W.W. with other specific paraphilic disorder to coercion, which means W.W. has an arousal to force women to submit to his sexual demands for his sexual gratification. This predisposes him to reoffend if released. The psychiatrist also diagnosed W.W. with antisocial personality disorder. He explained that the diagnoses addressed W.W.'s lack of volitional control—"an important component of his mental abnormality as well as his cognitive distortions." In addition to these diagnoses, the doctor also noted W.W. had a history of alcohol and cannabis abuse.

The psychiatrist concluded W.W. had not undergone sufficient treatment to mitigate his risk of reoffending. Static-99R results placed W.W. in a category of men who were well above average risk to sexually reoffend. In short, the doctor found that W.W. had demonstrated a great inability to be in the community and to control his sexual aggression, neither of which had been mitigated by treatment. Considering W.W.'s history of sexual offenses, undeterred by incarceration and unmitigated by treatment, the psychiatrist was of the opinion that W.W.'s risk to reoffend was highly likely if he were placed in any setting less restrictive than the STU.

A-5239-16T5

The psychologist, a member of the STU's Treatment Progress Review Committee, had annually reviewed W.W.'s progress. Significantly, she noted that during the past year in the STU, W.W. had not passed "core sex offender specific modules" such as relapse prevention. W.W. told her he had deliberately failed one of the modules. He had also admitted that he wanted to cause emotional pain and suffering to his victims and it "felt good and happy to him to hurt others."

The psychologist's diagnoses of W.W. were similar to those of the psychiatrist. She explained how his disorders enhanced his risk for sexual reoffending. After discussing and explaining the conditions and disorders that predisposed W.W. to reoffending, as confirmed through testing, evaluations, and W.W.'s non-progress in treatment, the psychologist concluded W.W. is at high risk to reoffend.

Based on the testimony of the two witnesses, the judge found the State had clearly and convincingly proven the criteria for continuing W.W.'s commitment.

To have a person committed under the SVPA, the State must prove by clear and convincing evidence three elements: the person has been convicted of a sexually violent offense; the person suffers from a mental abnormality or

4

personality disorder; and, as a result of such mental abnormality or personality disorder, "'it is highly likely that the [person] will not control his or her sexually violent behavior and will reoffend.'" In re Commitment of R.F., 217 N.J. 152, 173 (2014) (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).[1]

A person who has been involuntarily committed under the SVPA is entitled to annual review hearings to determine whether he or she remains in need of commitment despite treatment. N.J.S.A. 30:4-27.35; see also 30:4-27.32(a). Here, following a review hearing, the judge determined that the State had met its burden of proving the criteria for continuing W.W.'s commitment by clear and convincing evidence.

We affirm, substantially for the reasons expressed by the judge in the oral opinion he delivered at the conclusion of the review hearing. W.W.'s sole argument to the contrary is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

---

[1] The term "sexually violent offense" refers to offenses enumerated in the SVPA, including aggravated sexual assault, sexual assault, aggravated criminal sexual contact, criminal sexual contact, and "any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense." N.J.S.A. 30:4-27.26. The term "'mental abnormality' means a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." Ibid.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION